UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
MARGARET BUONSIGNORE,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-4582 (MKB)

MARGO K. BRODIE, United States District Judge:

    Plaintiff Margaret Buonsignore commenced the above-captioned action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Social Security disability insurance benefits ("DIB") under the Social Security Act (the "SSA"). (Compl., Docket Entry No. 1.) Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the Administrative Law Judge Brian J. Crawley (the "ALJ") committed error in his determination that Plaintiff is not entitled to DIB under Title II of the SSA because his assessment that she was not disabled was not supported by substantial evidence. (Pl.'s Mot. for J. on the Pleadings ("Pl.'s Mot."), Docket Entry No. 14; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem.") 5, Docket Entry No. 14-1.) The Commissioner cross-moves for judgment on the pleadings, arguing that substantial evidence supported the ALJ's findings. (Comm'r's Mot. for J. on the Pleadings ("Comm'r's Mot."), Docket Entry No. 17; Comm'r's Mem. in Supp. of Comm'r's Mot. ("Comm'r's Mem."), Docket Entry No. 17-1.)

    For the reasons set forth below, the Court grants Plaintiff's motion and denies the Commissioner's cross-motion.

### I. Background

Plaintiff was born in 1959. (Certified Admin. R. ("R.") 17, Docket Entry No. 10). Plaintiff has a high school education, (R. 34), and has not worked since March 1, 2017, (R. 33). Plaintiff's past work includes employment as an insurance sales agent and a secretary. (R. 49.)

On November 16, 2017, Plaintiff applied for DIB, alleging that she has suffered from a disability since March 1, 2017, when she was fifty-eight years old. (R. 142.) In her initial disability report, Plaintiff alleged disability due to anxiety and depression, (R. 176), and in a subsequent disability report, Plaintiff added that she was also diagnosed with diabetes in February of 2018, (R. 201). On April 12, 2018, the Social Security Administration initially denied Plaintiff's claim. (R. 9). Plaintiff requested a hearing, (R. 82), and, on October 15, 2019, Plaintiff appeared with an attorney and testified before the ALJ, (R. 28–52). By decision dated November 12, 2019, the ALJ determined that Plaintiff was not disabled from March 1, 2017, Plaintiff's alleged onset date, through November 12, 2019, the date of the decision. (R. 6–24.) On August 5, 2020, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's determination, rendering his decision final. (R. 1–3.) Plaintiff timely appealed to this Court. (*See* Compl.)

#### a. Hearing before the ALJ

On October 15, 2019, the ALJ heard testimony from Plaintiff and vocational expert Dale Elizabeth Pasculli (the "VE"). (R. 48.)

##### i. Plaintiff's testimony

Plaintiff testified that she has panic attacks if it is "a little too crowded" or if she has "too much on [her] plate." (R. 34.) During a panic attack, she feels like she cannot breathe. (R. 44.) Plaintiff had two or three panic attacks the month prior to the hearing. (R. 44–45.) She attends

therapy once a week and takes medications, both of which help with her symptoms. (R. 35–36.) Plaintiff suffers from depression, and sometimes she "can't get out of bed" and "cr[ies] a lot." (R. 34–35.) Plaintiff also suffers from diabetes and hypothyroidism, and as a result is always thirsty, urinates often, has blurry vision, is always exhausted, and has headaches. (R. 42.) Plaintiff can sit for a few hours before experiencing pain and numbness, and can stand for approximately fifteen to twenty minutes, but sometimes her back hurts. (R. 43.) Plaintiff generally does not have trouble walking and can walk "probably a few miles." (R. 43.) Plaintiff generally travels to Florida twice per year, (R. 37), and she visits Disney World every time she is in Florida, (R. 38).

### ii. Vocational expert testimony

The VE classified Plaintiff's past employment as that of an insurance sales agent and secretary. (R. 49.) Based on a hypothetical question from the ALJ, the VE testified that an individual of Plaintiff's age, education, past work experience, with no limitations to sitting, standing, or walking, and in addition to normal breaks for 90% of the workday, is limited to performing simple, routine, repetitive tasks, can perform positions requiring interactions with supervisors, coworkers and the public frequently, and can deal with changes and making work-related judgments frequently, could not return to Plaintiff's past work. (R. 49.) However, the hypothetical individual would be able to perform other light and unskilled work in the national economy such as addresser, routing clerk, and photocopying machine operator. (R. 49.)

The VE further testified that a hypothetical individual with the same limitations but who could only occasionally interact with supervisors, coworkers and the public, and would be limited to only occasional changes in the work setting and making occasional work-related judgments and decisions would still be able to perform the jobs of addresser, routing clerk, and

3

photocopying machine operator. (R. 50.) However, assuming the additional limitations of performing simple, routine, repetitive tasks for 80% of the workday and/or missing two days of work per month, the VE testified that such an individual would not be able to sustain any competitive work activity. (R. 50–51.)

    **b.   Function report**

In a written function report dated January 17, 2018, Plaintiff stated that she did not need assistance in taking care of basic tasks such as preparing simple meals, cleaning, laundry, driving, shopping in stores and on the computer, paying her bills, or visiting her friends or her son's group home. (R. 186–89.) Plaintiff felt generally out of shape and tired but was able to perform the following activities: lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, reaching, using her hands, seeing, hearing, and talking. (R. 190–91.) In a typical day, Plaintiff would take care of her disabled adult son and help him get ready or would sometimes spend the day in bed. (R. 185–86.) Another disabled son lived with her until December 29, 2017. (R. 186.)

    **c.   The ALJ's decision**

The ALJ conducted the five-step sequential analysis required by the SSA.[1] 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

---

[1] The five-step sequential process outlined by the SSA considers:
(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional

4

activity since March 1, 2017, the alleged disability onset date. (R. 11.) At step two, the ALJ found that Plaintiff has severe impairments of anxiety disorder and depressive disorder. (R. 11.) The ALJ determined that Plaintiff's "medically determinable impairments of record, including but not limited to diabetes, hyperlipidemia, and hypothyroidism are non-severe." (R. 11.) "As to physical abilities [Plaintiff] reported that she is tired and out of shape but . . . that she is able to perform all physical demands with no limitations such as walking, sitting, standing and other activities." (R. 12.) The ALJ found that osteoarthritic changes of the foot, a shoulder impairment, and sleep apnea were not medically determinable impairments. (R. 12.) At step three, he found that Plaintiff's impairments do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925, or 416.926. (R. 12.) At step four, the ALJ concluded that:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations; in addition to normal breaks for 90% of the work day the claimant can perform simple, routine repetitive tasks and frequently make work related judgments and decisions and frequently interact with supervisors, co-workers, and the general public and can frequently deal with changes in a routine work setting.

(R. 13.) In reaching his RFC determination, the ALJ noted that:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

---

capacity, age, education, and work experience.
*Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 260–61 (2d Cir. 2021) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)).

5

(R. 14.) The ALJ specified that, "[d]espite [Plaintiff's] allegations of disabling mental impairments, she has been capable of performing a wide and varied range of activities of daily living." (R. 15.) Based on the VE's testimony, the ALJ found that Plaintiff could not perform her past work. (R. 17.) At step five, based on his RFC determination, Plaintiff's age, education, and past work experience, the ALJ found that Plaintiff could perform other work that existed in significant numbers in the national economy, including unskilled jobs as an addresser, routing clerk, and photocopy machine operator. (R. 18.) Accordingly, the ALJ concluded that Plaintiff was "not disabled." (R. 18.)

## II. Discussion

### a. Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) (citing *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)). In deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir.

2012)). If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision. *See Ewen v. Saul*, No. 19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at 112); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (first citing 42 U.S.C. § 405(g); and then citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

### b. The ALJ committed legal error in determining Plaintiff's RFC

Plaintiff argues that the ALJ's step-four finding that Plaintiff may perform a full range of work at all exertional levels is not supported by substantial evidence. (Pl.'s Mem. 12.) In support, Plaintiff argues that "Dr. [Andrea] Pollack, the only physician to examine [her] and provide a medical opinion regarding her physical abilities, opined that [she] has a mild restriction to squatting, bending, lifting, carrying, pushing, pulling, walking, standing, and sitting." (*Id.*) Plaintiff contends that, since the ALJ did not identify any specific medical evidence that is inconsistent with Dr. Pollack's opinion, he arbitrarily substituted his own judgment for competent medical opinion.[2] (*Id.*)

The Commissioner argues that substantial evidence supports the ALJ's RFC finding because the ALJ properly determined that Dr. Pollack's extra postural limitations were "not persuasive" in light of the other evidence in the record. (Comm'r's Mem. 17.) In support, the Commissioner contends that the medical opinion was inconsistent with (1) Plaintiff's own statements with respect to her limitations, (*id.* at 17–18); (2) unremarkable objective or physical examinations, (*id.* at 14); and (3) Plaintiff's ability to perform daily activities, (*id.* at 19). The Commissioner contends that the ALJ properly compared Dr. Pollack's medical opinion to the

---

[2] Plaintiff did not raise any arguments with respect to the ALJ's findings as to her mental impairments and limitations, and the Court therefore does not address these findings.

7

record as a whole "to discount the opinion to the extent inconsistent with such evidence." (*Id.* at 23.)

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1); *Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015); *Penny Ann W. v. Berryhill*, No. 17-CV-1122, 2018 WL 6674291, at *4 (N.D.N.Y. Dec. 19, 2018). With respect to a claimant's physical abilities, an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). For example, "a limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* "In determining a claimant's RFC, '[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history.'" *Balaguer Perez v. Berryhill*, No. 17-CV-3045, 2019 WL 1324949, at *4 (E.D.N.Y. Mar. 25, 2019) (alteration in original) (quoting *Crocco v. Berryhill*, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017)); *see also Barry*, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain." (quoting 20 C.F.R. § 416.945(a)(3))). An ALJ "may not 'arbitrarily substitute [his] own judgment for competent medical opinion.'" *Selian*, 708 F.3d at 419 (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)); *Santangelo v. Saul*, No. 18-CV-6199, 2019 WL 4409339, at *8 (W.D.N.Y. Sept. 16, 2019) ("[A]n ALJ who makes an RFC determination in the absence of a supporting

8

medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." (quoting *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010))).

A district court must ensure that the ALJ has adequately developed the record in accordance with 20 C.F.R. § 404.1520(a)(3), which requires an ALJ to consider all evidence in the case record when making a determination or decision on a claimant's disability. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) ("[I]t is the rule in our circuit that the [social security] ALJ, unlike a judge in a trial, must [on behalf of all claimants] . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." (alterations in original) (quoting *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999))), *cert. denied*, 559 U.S. 962 (2010).  Pursuant to the SSA regulations, the Commissioner is obligated to "make every reasonable effort to help [the claimant] get medical evidence from [his] own medical sources and entities that maintain [his] medical sources' evidence when [the claimant] give[s] . . . permission to request the reports." 20 C.F.R. § 404.1512(b)(1); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  The Commissioner's duty to make such efforts includes the duty to seek, as part of such medical evidence and reports, a medical source statement or functional assessment detailing the claimant's limitations.  *See Robins v. Astrue*, No. 10-CV-3281, 2011 WL 2446371, at *3 (E.D.N.Y. June 15, 2011) ("[SSR] 96-5p confirms that the Commissioner interprets those regulations to mean that '[a]djudicators are generally required to request that acceptable medical sources provide these statements with their medical reports.'" (alteration in original) (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996))).

Nevertheless, "under certain circumstances, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *Hogans v.*

9

*Comm'r of Soc. Sec.*, No. 19-CV-2737, 2020 WL 5496114, at *14 (S.D.N.Y. Sept. 11, 2020) (quoting *Santillo v. Colvin*, No. 13-CV-8874, 2015 WL 1809101, at *10 (S.D.N.Y. Apr. 20, 2015)). "These include (a) where the medical evidence shows relatively little physical impairment, and (b) where the record contains sufficient evidence from which an ALJ can assess the RFC." *Thomas M. N. v. Comm'r of Soc. Sec.*, No. 19-CV-360, 2020 WL 3286525, at *4 (N.D.N.Y. June 18, 2020) (citing *Penny Ann W.*, 2018 WL 6674291, at *4); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8–9 (2d Cir. 2017) ("Where . . . 'the record contains sufficient evidence from which an ALJ can assess the [claimant's RFC], a medical source statement or formal medical opinion is not necessarily required.'" (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013))). "[A]n ALJ cannot 'assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.'" *Stubbs v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-6607, 2018 WL 6257431, at *6 (W.D.N.Y. Nov. 30, 2018) (quoting *Wilson v. Colvin*, No. 13-CV-6286, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)); *see Penny Ann W.*, 2018 WL 6674291, at *4 ("[T]he record must have more than mere medical findings: [A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings . . . ." (second alteration in original) (quoting *Barnes v. Berryhill*, No. 16-CV-1013, 2018 WL 1225542, at *4 (D. Conn. Mar. 9, 2018))). Therefore, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capacities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself." *Penny Ann W.*, 2018 WL 6674291, at *4 (alterations in original) (quoting *Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010), *report and recommendation adopted*, 2010

10

WL 2629821 (W.D.N.Y. June 28, 2010)). "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* at *6 (quoting *Gross v. Astrue*, No. 12-CV-6207, 2014 WL 1806779, at *19 (W.D.N.Y. May 7, 2014)).

In finding that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels," (R. 13), the ALJ discounted the examination findings by Dr. Pollack that "[Plaintiff] ha[d] a mild restriction squatting, bending, lifting, carrying, pushing, pulling, walking, standing, and sitting," (R. 345), because "the intensity, persistence and limiting effects" of the symptoms of Plaintiff's medically determinable impairments were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 14.) Specifically, the ALJ identified that, in her function report, Plaintiff stated that she did not have limitations in "lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, reaching, or using her hands." (R. 190–91.) In addition, the ALJ noted that Plaintiff "had a generally normal physical examination aside from restricted range of motion in her cervical spine and lumbar spine." (R. 15.) Plaintiff was also able to "walk on heels and toes without difficulty, squat [three-fourths] of the way down and needed no help getting on or off the examination table to chang[e]." (R. 15.) Plaintiff's joints were "stable and nontender," her strength was "full in her upper and lower extremities," and she had "intact grip strength and hand and finger dexterity." (R. 15.) The ALJ also referred to Plaintiff's activities of daily living, including her statements that "she is able to cook, clean[,] do laundry, shower, dress, watch television, go to the store and socialize with friends." (R. 15.) The ALJ noted that Plaintiff was

11

also able to "drive a car and go out alone" and could "pay bills, count change and handle a savings account, watch television and read every day." (R. 15.) Plaintiff was also "able to travel to other states by airplane." (R. 15.) In sum, the ALJ concluded that "based on the record as a whole, consistent with the notes, findings, and opinions of the claimant's treating physician and other non-treating physicians that are discussed above," and taking into consideration "[Plaintiff's] activities of daily living, conservative and no more than treatment that includes successful therapy and medication management," Plaintiff had the RFC to perform at all exertion levels. (R. 17.)

The ALJ relied on nothing more than bare medical findings to reach this conclusion. None of the medical sources the ALJ relied on to find Dr. Pollack's opinion unpersuasive assessed Plaintiff's functional capacity or limitations based on their findings, and the record does not contain any medical opinion evidence from acceptable medical sources with respect to Plaintiff's physical functional capacity or limitations — other than the opinion provided by Dr. Pollack. Under these circumstances, the ALJ had a duty to develop the record and to obtain functional assessments from Plaintiff's treating or examining physicians. *See Aceto v. Comm'r of Soc. Sec.*, No. 08-CV-169, 2012 WL 5876640, at *16 (N.D.N.Y. Nov. 20, 2012) ("[Because] the ALJ had nothing more than treatment records and consultative reports to review, he had an affirmative duty to develop the record and request that Plaintiff's treating physicians assess her RFC."); *Pabon v. Barnhart*, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) ("[T]he duty to develop a full record . . . compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability." (quoting *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991))).

Instead of developing the record, the ALJ concluded, based on (1) Plaintiff's subjective claims, (2) notes from her physical examinations that did not address functional capacity or limitations, and (3) Plaintiff's ability to perform daily activities, that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels." (R. 13.)  However, the ALJ is not permitted to substitute his own lay opinion of the medical evidence for an acceptable medical source who provided an opinion on Plaintiff's functional limitations. *See, e.g.*, *Perez*, 2019 WL 1324949, at *6 ("Without a supporting medical opinion of [the plaintiff's] functional limitations, the ALJ's RFC determination that [the plaintiff] was capable of sedentary work 'constituted an impermissible interpretation of bare medical findings' and is not supported by substantial evidence." (quoting *Guarino v. Colvin*, No. 14-CV-598, 2016 WL 690818, at *2 (W.D.N.Y. Feb. 22, 2016))); *Felder v. Astrue*, No. 10-CV-5747, 2012 WL 3993594, at *13 (E.D.N.Y Sept. 11, 2012) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." (citing *Hilsdorf*, 724 F. Supp. 2d at 347)); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities.")

Dr. Pollack's opinion is the only evidence in the record as to Plaintiff's physical functional limitations, and it directly contradicts the ALJ's RFC determination.  By failing to support the RFC determination with proper medical evidence, the ALJ committed legal error, warranting remand.  *See, e.g.*, *Santangelo*, 2019 WL 4409339, at *10 (finding RFC determination unsupported by substantial evidence and remanding where "[i]t appear[ed] that the

13

ALJ interpreted the raw medical evidence to arrive at the conclusion that [the plaintiff] was physically capable of light work"); *Penny Ann W.*, 2018 WL 6674291, at *6 (remanding "because the record is underdeveloped regarding the functional implications of [the plaintiff's] weakness in her lower extremities" and "in failing to obtain a medical opinion as to [the plaintiff's] RFC, the ALJ failed to fully develop the record"); *House v. Astrue*, No. 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (finding RFC determination unsupported by substantial evidence and remanding "[b]ecause there is no medical source opinion supporting the ALJ's finding that [the plaintiff] can perform sedentary work"); *see also Ostrom v. Comm'r of Soc. Sec.*, No. 14-CV-268, 2015 WL 1735097, at *12–14 (N.D.N.Y. Apr. 16, 2015) (finding error where the ALJ rejected the "only competent [RFC] medical opinions of record" and instead "substituted her own judgment" of the medical findings as support for the RFC); *Downes v. Colvin*, No. 14-CV-7147, 2015 WL 4481088, at *15 (S.D.N.Y. July 22, 2015) (noting that "the treatment notes and test results from [the plaintiff's] treating physicians do not assess how [the plaintiff's] symptoms limited his functional capacities" and remanding for further findings).

In addition, Plaintiff's physical impairment is not so relatively minor that an ALJ may permissibly render a commonsense judgment about functional capacity without a physician's assessment. The VE testified that the impairment is sufficiently significant to render Plaintiff incapable of performing her prior work in the insurance sector, and the physical impairments identified through a variety of instrumental and clinical assessments are not immediately apparent to a lay person. Thus, the ALJ is not qualified to interpret raw data in in the medical record. *See Penny Ann W.*, 2018 WL 6674291, at *5 (finding that weakness and problems with the plaintiff's lower extremities were not minor impairments); *cf. Lewis v. Colvin*, No. 13-CV-1072, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (holding that remand was not

required where the only limitation identified in physical therapy evaluation was a decreased ability to lift her left arm overhead "to put away dishes, do hair, wash in shower").

Nor is this a case where the record contains sufficient evidence that the ALJ could determine Plaintiff's functional limitations on his own. The ALJ's consideration of whether Plaintiff's subjective claims in the function report, which predates much of the consultative examinations contained in the medical evidence, and Plaintiff's capacity to perform daily activities are inconsistent with Dr. Pollack's opinion requires further development of the medical record rather than the ALJ's own determination of Plaintiff's RFC. Plaintiff's efforts to pursue a personal life and to engage in self-care do not alone establish her capacity to work or contradict allegations of disability. *See Balsamo*, 142 F.3d at 81–82 ("'[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals,' such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'" (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989))); *Woodford*, 93 F. Supp. 2d at 529 (explaining that "'[s]uch activities do not by themselves contradict allegations of disability,' as people should not be penalized for enduring the pain of their disability in order to care for themselves" (quoting *Boyd v. Apfel*, No. 97-CV-7273, 1999 WL 1129055, at *3 (E.D.N.Y. Oct. 15, 1999))). In addition, Plaintiff's subsequent elaboration on her symptoms to her treating physicians — that she would experience pain and numbness after sitting for a few hours and could stand for approximately fifteen to twenty minutes although her back hurt sometimes — undermines the weight the ALJ placed on the information provided in her function report. (*See* R. 43.)

The evidence does not provide a "sufficient [basis] from which an ALJ can assess the petitioner's [RFC]," *Tankisi*, 521 F. App'x at 34, and therefore the ALJ had a duty to develop the record and, in particular, to obtain RFC assessments from other sources. *See, e.g.*, *Santangelo*, 2019 WL 4409339, at *10 (finding RFC determination unsupported by substantial evidence and remanding where "[t]he only discussion of [the plaintiff's] ability to lift, stand, and walk is from her hearing testimony" and "[i]t appear[ed] that the ALJ interpreted the raw medical evidence to arrive at the conclusion that [the plaintiff] was physically capable of light work"); *House v. Astrue*, No. 11-CV-915, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (finding RFC determination unsupported by substantial evidence and remanding "[b]ecause there is no medical source opinion supporting the ALJ's finding that [the plaintiff] can perform sedentary work"); *Downes*, 2015 WL 4481088, at *15 (noting that "the treatment notes and test results from [the plaintiff's] treating physicians do not assess how [the plaintiff's] symptoms limited his functional capacities" and remanding for further findings).

Accordingly, the ALJ failed to support the RFC determination with proper medical evidence, and the Court remands for the ALJ to develop the record as it relates to Plaintiff's physical impairments by obtaining RFC assessments from medical sources. *See Butts*, 388 F.3d at 385 ("That is, when 'further findings would so plainly help to assure the proper disposition of [the] claim, we believe that remand is particularly appropriate.'" (alteration in the original) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999))); *Mantovani v. Astrue*, No. 09-CV-3957, 2011 WL 1304148, at *4 (E.D.N.Y. Mar. 31, 2011).

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings. The

Commissioner's decision is vacated and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Clerk of Court is directed to close this case.

Dated: September 9, 2022
      Brooklyn, New York

                                              SO ORDERED:

                                              s/ MKB
                                              MARGO K. BRODIE
                                              United States District Judge